IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEST MASTERS EDUCATIONAL | § | |
| SERVICES, INC., | § | |
|         Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1771 |
| | § | |
| ROBIN SINGH EDUCATIONAL | § | |
| SERVICES, INC., *et al.*, | § | |
|         Defendants. | § | |

## MEMORANDUM AND ORDER

This trademark dispute is before the Court on the Motion for Summary Judgment ("Singh's Motion") [Doc. # 156] filed by Defendants Robin Singh Educational Services, Inc. d/b/a TestMasters and Robin Singh (collectively, "Singh"), to which Plaintiff Test Masters Educational Services, Inc. ("TES") filed a Response [Doc. # 168], and Singh filed a Reply [Doc. # 176]. Defendants seek summary judgment on TES's claim for nationwide registration of the "Testmasters" trademark[1] for courses of instruction and materials to prepare students to take and achieve higher scores on standardized tests, on TES's infringement claims, and on their own infringement counterclaim against TES.

---

[1] The parties at various times have described the trademark as "Testmasters," "TestMasters," and/or "Test Masters." They each assert superior rights to the trademark in all iterations. For purposes of simplicity, the Court will refer to the subject trademark as "Testmasters" or the "Mark."

Also pending is TES's Motion to Dismiss Defendants' Counterclaims and Alternative Motion for Partial Summary Judgment ("TES's Motion") [Doc. # 158], to which Defendants filed a Response [Doc. # 167], and TES filed a Reply [Doc. # 178].   TES seeks summary judgment that Singh's counterclaims are barred by collateral estoppel, that Singh lacks standing to seeks affirmative relief or to challenge TES's claim for registration of the "Testmasters" mark, and that Singh is permanently enjoined from claiming the "Testmasters" mark.

The Court has reviewed the extensive record, including prior rulings by the Honorable Vanessa Gilmore, by the United States Court of Appeals for the Fifth Circuit, and by the Trademark Trial and Appeal Board ("TTAB").[2]   Based on this review, and the application of relevant legal authorities, the Court **grants** summary judgment on certain issues and **denies** summary judgment on others.

## I.    BACKGROUND

### A.    The Parties

This dispute involves competing claims to the "Testmasters" trademark by two companies that each provide test preparation services.   Plaintiff TES provides test

---

[2]     Defendants have filed Objections to Plaintiff's Summary Judgment Evidence [Doc. # 179], and Plaintiff has filed Objections to Defendants' Summary Judgment Evidence [Doc. # 175].  The Court has not relied on evidence that is not properly considered.  Therefore, except to the extent a specific objection is addressed in detail herein, the objections are **overruled as moot**.

preparation services to assist individuals pass or achieve higher scores on standardized tests, primarily engineering licensing examinations such as the Fundamentals of Engineering Exam and the Professional Engineer Exam.  Haku Israni started the company in 1991 and offered his first test preparation course in March 1992.[3]  TES has offered courses continuously since 1992, primarily in Texas and primarily in the engineering field.  Vivek ("Roger") Israni, Haku Israni's son, currently is the owner and president of TES.

---

[3]    TES alleged in its original complaint in 1999 that it first used the Mark "at least as early as 1992" and had continually used the Mark from "at least 1992."  *See* Complaint [Doc. # 1] in *Test Masters Educ. Servs., Inc. v. Robin Singh d/b/a Testmasters*, Civil Action No. H-99-2781, ¶ 9, Exh. G-2 to Defendants' Motion.  At trial in the 1999 case, Haku Israni testified that TES's first preparation class was held in the spring of 1992.  *See* Defendants' Exh. G-3.  In its federal trademark applications, TES (through its President, Vivek Israni) stated under oath that its first use of the Mark was in March 1992.  *See* Defendants' Exh. D-7.  In its Texas state trademark application, TES again swore that its first use of the Mark was in March 1992.  *See* Defendants' Exh. G-4.  The Fifth Circuit has twice noted that TES's first use was in 1992.  *See Test Masters Educ. Servs., Inc. v. Singh*, 2002 WL 1940083, *1 (5th Cir. July 24, 2002) ("*TestMasters I*"); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 566 (5th Cir. 2005) ("*TestMasters II*").

In its Response to Defendants' Motion for Summary Judgment in the pending action, however, TES submits the Declaration of Roger Israni, who states that TES has used the Mark since 1991.  *See* Declaration of Roger Israni, Exh. C to Response [Doc. # 168], ¶ 2.  This statement is contrary not only to prior testimony, but to TES's position for thirteen years.  Defendants' Objection to ¶ 2 of the Israni Declaration is **sustained**.  *See S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 495 (5th Cir. 1996)); *accord Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 385-87 (5th Cir. 2000); *Copeland v. Wasserstein, Perella & Co., Inc*., 278 F.3d 472, 482 (5th Cir. 2002).

Defendants are Robin Singh Educational Services, Inc. and its owner, Robin Singh. Defendants do business outside of Texas under the name TestMasters, offering test preparation services in the District of Columbia and in all states except Texas, primarily LSAT preparation courses. Defendants began offering test preparation courses in California under the "TestMasters" name in 1991. Singh applied for federal registration of TestMasters in June 1995. The United States Patent and Trademark Office ("PTO") initially denied Singh's application, finding that there were three substantially similar marks already registered. After later determining that none of the three marks were still in use, the PTO approved Singh's application in March 1999.

### B.    The First Round of Lawsuits

In 1999, Singh discovered that TES already owned the "testmasters.com" domain name. Singh's attorney sent TES a demand letter, claiming that TES's use of the domain name infringed Singh's trademark rights. In August 1999, TES filed suit in federal court in Houston, *Test Masters Educ. Servs., Inc. v. Robin Singh d/b/a TestMasters*, Civil Action No. H-99-2781. The case was assigned to the Honorable Vanessa Gilmore. In June 2000, Singh filed his own lawsuit against TES in California. The California lawsuit was consolidated into the Texas suit.

Following discovery in the consolidated lawsuit, Singh moved for summary judgment that TES had no right to use the Mark outside of Texas.  TES did not contest Singh's motion, stating that "TES does not oppose entry of partial summary judgment that its concurrent use trademark rights do not extend in geographical scope beyond Texas."  *See* Defendants' Exh. D-4.  Judge Gilmore adopted the Memorandum and Recommendation ("M&R") of her Magistrate Judge.  *See* Doc. # 147, Civil Action No. H-99-2781.  The Magistrate Judge, and Judge Gilmore by adopting the M&R, noted that TES did not oppose entry of summary judgment because "TES has shown no evidence in support of the assertion that it is entitled to use the 'test masters' mark outside of Texas."  *See* M&R, Doc. # 123, Civil Action No. H-99-2781.  On that basis, Judge Gilmore granted Singh's motion for summary judgment that TES had no rights in the Mark beyond the state of Texas.  The ruling was not appealed and is now final and non-appealable.

Remaining claims in the consolidated case were tried to a jury in February 2001.  The jury found that the "Testmasters" mark was descriptive but had acquired secondary meaning.  The jury found also that TES had infringed Singh's trademark, but was an innocent prior user.  Based on the jury's verdict, Judge Gilmore ordered the director of the PTO to modify Singh's trademark registration to give TES the exclusive right to use the Mark in Texas.

Both parties appealed, and the Fifth Circuit issued its decision on July 24, 2002. The Fifth Circuit noted that the jury found the trademark to be "descriptive," and it conducted its analysis on the basis of the Mark being descriptive and requiring proof of secondary meaning to establish distinctiveness. *See TestMasters I*, 2002 WL 1940083 at *2. The Fifth Circuit held that Singh had failed to establish secondary meaning, vacated the district court's judgment for Singh on his unfair competition claim, and remanded for an order that Singh's trademark is invalid. *See id.* at *5.

At the conclusion of the first round of lawsuits between TES and Singh, it was established that the Mark is descriptive, that TES had no rights in the Mark beyond the state of Texas, and that Singh had failed to prove that the Mark had acquired secondary meaning.

## C.    <u>Round Two</u>

On July 26, 2002, two days after the Fifth Circuit's decision in *TestMasters I*, Singh filed a new application with the PTO to register the trademark "Testmasters." TES filed a Motion for Modification of Final Judgment and Permanent Injunction in Civil Action No. H-99-2781. The district court issued an Order on July 24, 2003, permanently enjoining Singh from "pursuing registration" of the marks in the PTO and from "interfering with or opposing" TES's registration of the Marks. *See* Doc. # 241 in Civil Action No. H-99-2781. The District Court also permanently enjoined

Singh from using the Mark in Texas and ordered the PTO to cancel Singh's trademark issued in 1999. *See id.*

On June 23, 2003, Singh filed a second suit against TES in California. The case was transferred to Texas, where it was docketed as *Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc*., Civil Action No. H-03-3348 and assigned to Judge Gilmore. On October 5, 2004, the case was dismissed as barred by *res judicata*. *See* Amended Order [Doc. # 205 in Civil Action No. H-03-3348]. Judge Gilmore stated that Singh's continued refiling of the same claims "to test whether or not the time is yet ripe to relitigate secondary meaning will be, for quite some time, to no avail." *Id.* at 24.

Singh appealed both the dismissal of Civil Action No. H-03-3348 and the injunction issued in Civil Action No. H-99-2781. On October 18, 2005, the Fifth Circuit issued its decision. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005) ("*TestMasters II*"). The Fifth Circuit again conducted its analysis based on the subject trademark being descriptive. The Fifth Circuit disagreed that Singh's second lawsuit was barred by *res judicata*, but held that it was instead barred by collateral estoppel. The Fifth Circuit did not hold that relitigation of the secondary meaning issue was forever barred, but held that collateral estoppel would apply unless "after a significant amount of time had passed an intervening factual change had

occurred." *See TestMasters II*, 429 F.3d at 575.  The Fifth Circuit noted that "TES has established no rights to the mark outside of Texas" and, therefore, held that the injunction was too broad because it was not limited to enjoining Singh from opposing TES's use of the Mark within Texas.  *See id.* at 578.  As a result, the Fifth Circuit vacated the injunction "insofar as it enjoins Singh from opposing or interfering with TES's contention that it has rights to the [Mark] outside of the state of Texas."  *See id.* at 580, 582.

At the conclusion of Round Two, it remained clearly established that the Mark was descriptive, that TES had no right to the Mark beyond the state of Texas, that Singh was collaterally estopped to challenge or otherwise interfere with TES's use of the Mark in Texas, and that Singh could challenge TES's claim to rights in the Mark outside of Texas.

### D.    **Round Three**

Haku Israni and other members of his immediate family are co-owners of Excel Test Prep Inc. ("Excel").  In November 2003, Singh sued Excel in federal court in California, alleging that Excel was improperly using the "Testmasters" trademark. The case was transferred to federal court in Houston in March 2005, where it was docketed as Civil Action No. H-05-1085, assigned to Judge Gilmore, and then consolidated into a multidistrict case, *In re TestMasters Trademark Litigation*, 04-md-

1646.  On September 28, 2006, Judge Gilmore dismissed the Excel lawsuit as barred by collateral estoppel.  *See* Order [Doc. # 105 in Civil Action No. 4:04-md-1646].  In her decision, Judge Gilmore noted that there was a "lack of evidence to demonstrate that a significant intervening factual change has occurred" and that only a "short amount of time . . . has passed since the Fifth Circuit's previous decisions regarding the secondary meaning issue."  *Id.* at 27.  Judge Gilmore held that Singh's federal statutory and state common law infringement claims were barred because the issue of secondary meaning had been litigated in prior cases.  *See id.*

On appeal, the Fifth Circuit affirmed, finding that there had been no significant intervening factual change "post-2003."  *See Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc.*, 274 F. App'x 399, 406 (5th Cir. Apr. 2008).

### E.    TTAB Proceedings

Meanwhile, TES filed three applications for nationwide registration of the Mark:  Applications No. 76413999 filed May 24, 2001 and amended August 27, 2002; No. 76456163 filed October 7, 2002; and No. 76306308 filed August 28, 2001 and amended August 23, 2002.[4]  Singh filed timely oppositions to each application: Oppositions No. 91163136 filed November 29, 2004; No. 91164627 filed March 22, 2005; and No. 91171241 filed June 5, 2006.  In August 2007, the TTAB granted

---

[4]    As noted above, Singh also filed an application in 2002, but the TTAB proceedings currently at issue in this case are the applications filed by TES.

Singh leave to amend its oppositions to TES's applications and to litigate the secondary meaning issue. *See* Defendants' Exh. D-14. In March 2011, the TTAB held that the Mark is descriptive and that TES had failed to establish that the Mark had secondary meaning. *See* Defendants' Exh. D-15. As a result, the TTAB refused to register the Mark. *See id.* The TTAB decisions are discussed in more detail below.

### F.   The Current Consolidated Lawsuits

Meanwhile, in June 2008, TES filed this lawsuit alleging trademark infringement and various other claims. TES sought, *inter alia*, an order directing the PTO to grant its pending applications for registration of the Mark. Defendants filed counterclaims, including trademark infringement and seeking an order from this Court directing the PTO to reinstate its prior registration of the Mark for the District of Columbia and all states except Texas.

After the TTAB issued its ruling denying TES's applications for nationwide registration of the Mark in March 2011, TES filed another lawsuit appealing that administrative decision and asking this Court to order nationwide registration or, alternatively, registration of the Mark "limited to the geographic areas and/or for a more limited listing of goods and or services for which it proves its marks have achieved secondary meaning." *See* Complaint [Doc. # 1] in Civil Action No. H-11-2035. That lawsuit was consolidated into this case, Civil Action No. H-08-1771.

After protracted discovery filled with innumerable disputes, the Court allowed the parties to file summary judgment motions on certain issues.  Those motions have been filed, have been fully briefed, and are ripe for decision.

## II.   TES'S APPEAL OF TTAB DECISION AND REQUEST FOR REGISTRATION

TES filed three applications to register the "Testmasters" trademark nationwide.[5]  In two applications, TES sought geographically unrestricted registration for the Mark in connection with "educational services, namely, providing courses of instruction and materials to prepare students to take and achieve higher scores on standardized tests." *See* TTAB March 31, 2011 Decision, Defendants' Exh. D-15, pp. 1-2.  In a third application, TES sought geographically unrestricted registration for the Mark in connection with "computer software featuring materials for standardized test preparation, school admissions, namely private secondary school, undergraduate and graduate school selection, electronic applications, scholarships and financial aid and careers, namely, interest assessment, job search, job planning, job selection and career development not including vocational training in the industrial arts."  *See id.* at 1. Singh filed oppositions to all three applications, and the TTAB consolidated the three oppositions.

---

[5]    Applications No. 76413999 filed May 24, 2001 and amended August 27, 2002;  No. 76456163 filed October 7, 2002; and No. 76306308 filed August 28, 2001 and amended August 23, 2002.

In August 2007, the TTAB granted leave for Singh to amend its notices of opposition in all three opposition cases to assert that TES's mark lacked distinctiveness.  Specifically, Singh was allowed to amend its opposition to assert that TES was bound by the jury's February 2001 finding that the Mark is descriptive.  The TTAB, in that same Decision, held that collateral estoppel did not bar Singh from attempting to prove its claims regarding secondary meaning.

In March 2011, the TTAB held that there was no genuine issue of material fact as to the descriptiveness of the Mark as used by either party.  The TTAB found that TES failed to demonstrate "substantially exclusive use of the marks" and, on that basis, refused the registrations requested by TES.

TES filed a timely appeal to this Court.  *See* Appeal [Doc. # 1 in Civil Action No. H-11-2035].  TES argues that the TTAB erred (1) in allowing Singh to amend its oppositions; (2) in granting summary judgment that TES could not establish secondary meaning; (3) in failing to consider that Singh did not make significant use of the Mark in certain geographic and subject matter areas; and (4) in failing to honor the injunction prohibiting Singh from interfering with or opposing TES's registration of the Marks in Texas.  Defendants in their Motion for Summary Judgment, argue that the Court, after conducting *de novo* review, should reach the same decisions as the TTAB.  TES's appeal from the TTAB has been briefed and is ripe for decision.

### A.    Standard of Review

A decision by the TTAB may be appealed to the Court of Appeals for the Federal Circuit pursuant to 15 U.S.C. § 1071(a), or by filing a civil action in district court pursuant to 15 U.S.C. § 1071(b)(1).  In this case, TES elected to pursue a civil action in district court challenging the TTAB's decision and seeking nationwide registration of the Mark for preparation courses for all standardized tests.

The district court "may adjudge that an applicant is entitled to a registration upon the application involved, . . . or such other matter as the issues in the proceeding require, as the facts in the case may appear."  15 U.S.C. § 1071(b)(1).  In a proceeding under § 1071(b), the district court is a fact-finder, reviewing the evidence *de novo*. *See Board of Regents of Univ. of Wisconsin Syst. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 452 (7th Cir. 2011); *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 674 (7th Cir. 2001); *Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738, 745 (E.D. Va. 2012); *Creative Arts by Calloway, LLC v. Brooks*, 2012 WL 6732907, *3 (S.D.N.Y. Dec. 27, 2012).

### B.    Leave to Amend

Singh was granted leave to amend its oppositions to TES's applications before the TTAB.   Singh argued that changed circumstances required the amended opposition and that TES would not be prejudiced by the amendments.  The TTAB

noted that, at the time it decided to grant leave to amend, TES had not yet filed an answer to one of the oppositions.  In TTAB proceedings, a notice of opposition may be amended as of right prior to the filing of the responsive pleading.  *See* TTAB August 30, 2007 Decision, Defendants' Exh. D-14, p. 19.

"Leave to amend should be freely granted when justice requires." *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006) (citing FED. R. CIV. P. 15(a)).  The Court agrees that Singh should have been allowed to amend its oppositions at the early stage of the TTAB proceedings.

### C.   Challenge to TTAB Finding that Mark is Descriptive

A trademark is protected if it is distinctive.  *TestMasters II*, 428 F.3d at 566. "A distinctive mark is one that identifies the source of its user." *Id.* (citing *Sugar Busters, LLC v. Brennan,* 177 F.3d 258, 268 (5th Cir. 1999)).  A suggestive mark is inherently distinctive.  *Id.*  "Because descriptive marks do not inherently identify a source, they cannot be protected unless they acquire distinctiveness through secondary meaning." *Id.*  Secondary meaning occurs when "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Id.* (citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000)).  Trademark protection for a descriptive mark requires proof of secondary

meaning, while protection for a distinctive mark does not.  As explained below, TES argues that the Mark is not descriptive as to TES.

The TTAB found that the "Testmasters" mark is descriptive.  A descriptive mark denotes "a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients." *TestMasters I*, 2002 WL 1940083 at *2 (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir. 1983)).  A descriptive mark "is not inherently connected with a particular seller and therefore buyers do not treat it as a proxy for anyone's products." *Id.*  TES argues that the Mark is distinctive.

### 1.     Judicial Estoppel

TES is judicially estopped from arguing that the Mark is other than descriptive. "Judicial estoppel is an equitable doctrine designed to protect the integrity of judicial proceedings by preventing litigants from asserting contradictory positions for tactical gain." *Republic of Ecuador v. Connor*, 708 F.3d 651, 654 (5th Cir. 2013).  A "party may be estopped from asserting a position in a judicial proceeding where it has previously persuaded a court to adopt a clearly contrary position to the disadvantage of an opponent." *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742 (2001)). "Because judicial estoppel is an equitable doctrine, courts may apply it flexibly to

achieve substantial justice." *Id.* (quoting *Reed v. City of Arlington*, 650 F.3d 571, 576 (5th Cir. 2011) (*en banc*)).

TES argued in the original *TestMasters* lawsuit, Civil Action No. H-99-2781, that the Mark was descriptive.  Indeed, Haku Israni testified at trial that the name "Test Masters" was chosen because it was "extremely descriptive" and was "the most descriptive name one can think of."  *See* Trial Transcript, Defendants' Exh. D-16, p. 122.  The jury agreed, finding specifically that the Mark was descriptive.  *See* Jury Verdict [Doc. # 172 in Civil Action No. H-99-2781], p. 2.  The Fifth Circuit accepted the jury's verdict, conducting its analysis and requiring a showing of secondary meaning based on the Mark being descriptive.

TES took the position in Civil Action No. H-99-2781 that the "Testmasters" Mark is descriptive, and supported that position with sworn testimony.  The jury, Judge Gilmore, and the Fifth Circuit accepted that position.  The Marks used by both parties are identical.  Consequently, TES is judicially estopped from arguing now that the Mark is other than descriptive.[6]

---

[6]     Judicial estoppel applies to preclude TES from asserting that the Mark is other than descriptive both in TES's Appeal from the TTAB decision (Civil Action H-11-2035) and in Civil Action No. 08-1771 filed in this Court by TES.

## 2.    TES's Argument that the Mark Is Suggestive

TES's argument that the Mark is not descriptive, even if the argument were not barred by judicial estoppel, is without merit.  TES argues that the Mark is suggestive. If the Mark is suggestive, it is  inherently distinctive and TES is not required to prove that the Mark has acquired secondary meaning.  TES argues it uses "Testmasters" in a "suggestive" way to mean that if you take its preparation course you will master the test, while Singh uses "Testmasters" in a descriptive way to mean that the individuals preparing you for the test are masters of that subject matter.

A  "*suggestive* term suggests, rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods and services."[7]  *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir. 1983), *abrogated on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004) (italics in original).  "A mark is suggestive and inherently distinctive and protectible if it requires 'imagination, thought, and perception to reach a conclusion as to the nature of the goods.'"  *Fair Isaac Corp. v. Experian Info. Solutions, Inc.*, 650 F.3d 1139, 1147 (8th Cir. 2011)

---

[7]     The trademark often cited as representing a suggestive mark is "Tide" laundry detergent.  *See, e.g., Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000); *TestMasters II*, 428 F.3d at 566.

(quoting *Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc.,* 426 F.3d 1001, 1005 (8th Cir.2005)).   Although TES may use the "Testmasters" name to describe a different aspect of its service than Singh, the Mark describes the service without the need for "imagination" to determine the nature of the service.   It requires no more imagination to divine that TES will enable you to master a test than to determine that Singh's instructors are masters of the test material.   This Court, as the fact-finder for purposes of the Appeal, finds that the Mark is descriptive and not suggestive.

### 3.     Court Ordered Registration of TES's Mark in Texas

The jury in Civil Action No. H-99-2781 found that the Mark was descriptive, that Singh had established secondary meaning, but that TES was an innocent prior user.   *See* Jury Verdict [Doc. # 172 in Civil Action No. H-99-2781].   Based on the jury's verdict, Judge Gilmore ordered the PTO to grant TES registration of the Mark for concurrent use in Texas; she did not include a requirement that the PTO determine whether the Mark had acquired secondary meaning.   *See* Final Judgment [Doc. # 192 in Civil Action No. H-99-2781].   TES argues that this is an implicit finding that the Mark is more than descriptive because a descriptive mark is not protectable absent secondary meaning.

TES's argument is unpersuasive.   Judge Gilmore's order to the PTO was direct and unequivocal – the PTO was to register TES's concurrent use of the Mark in

Texas.  The PTO complied with Judge Gilmore's order without condition.  The PTO did not require anything additional from TES before it would comply with the federal court order.  TES cites no legal authority that supports its "implicit finding" argument. Instead, TES relies on inapposite cases involving the PTO reaching its own independent decision regarding registration.  *See, e.g., Lone Star Steakhouse & Saloon v. Alpha of Va.*, 43 F.3d 922, 934 (4th Cir. 1995) (noting that PTO requires applicants with descriptive marks to prove secondary meaning).  The PTO's compliance with Judge Gilmore's order implies only that the PTO recognizes its obligation to comply with such orders.

### D.    TES Did Not Establish Secondary Meaning As Claimed

The Court has concluded that TES is judicially estopped from asserting that the Mark is other than descriptive and, as the fact-finder in the Appeal, has found that the Mark is descriptive.  As a result, both for purposes of the Appeal and Civil Action No. H-08-1771, TES is required to establish secondary meaning in order to have a right to register the Mark pursuant to § 2(f) of the Lanham Act, 15 U.S.C. § 1052(f).

The TTAB decided that TES failed to establish secondary meaning based exclusively on TES's failure to establish that it was the substantially exclusive user of the Mark.[8]  TES argues correctly that the Fifth Circuit requires consideration of

_____

[8]      Section 2(d) of the Lanham Act provides that the PTO may refuse to register a mark
(continued...)

several factors in evaluating whether a descriptive mark has acquired distinctiveness by obtaining secondary meaning.[9]  In evaluating whether a trademark has acquired secondary meaning, the following factors are relevant: "(1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress." *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 541 (5th Cir. 1998).  "While each of these types of evidence alone may not prove secondary meaning, in combination they may indicate that consumers consider the mark or trade dress to be an indicator of source." *Id.* (citing *Zatarains,* 698 F.2d at 795).  The fact-finder, the Court for purposes of the Appeal, focuses on whether the evidence "demonstrates that the meaning of the mark or trade dress has been altered in the minds of consumers." *Id.*

---

[8]      (...continued)

if it "consists of or comprises a mark which so resembles . . . a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d).  The TTAB did not, however, refuse TES's registration requests on that basis.

[9]      TES argues that if its use of the Mark is not substantially exclusive due to Singh's use, then Singh's use is likewise not substantially exclusive due to TES's use.  The Court agrees.

### 1.    Length and Manner of Use of the Mark

The evidence before the Court establishes that both parties have been using the Mark for test preparation courses for many years.  Singh began using the Mark first in California, while TES began using the Mark first in Texas.  Singh was the first to use the Mark outside the state where it was first used.  Singh began using the Mark for LSAT preparation courses many years before TES, while TES is the prior user of the Mark for preparation courses for professional engineering examinations.  Indeed, it is unclear from the record whether as of today Singh offers engineering test preparation courses.

### 2.    Volume of Sales

The evidence before the Court establishes that Singh is a larger company than TES.  Singh has significantly greater sales and larger enrollment outside of Texas than TES.  The Court finds TES's evidence less reliable because it is based on the student's home address rather than where TES offers test preparation courses.  On that basis, TES claims unpersuasively to use the Mark in states in which it actually offers no courses.  The record indicates that, outside of Texas, TES offers courses primarily in Florida, South Carolina, and Arizona.

Additionally, the Court notes that TES's revenue from courses outside Texas is primarily for engineering courses.  Indeed, TES's evidence indicates revenue

outside Texas for engineering courses is $5,977,293, while its revenue outside Texas for LSAT preparation courses (the next highest source of revenue) is only $808,336.

### 3.      Amount and Manner of Advertising

Both parties have spent millions of dollars on advertising since 2004.  It does not appear, however, than any of TES's advertising was directed specifically to individuals seeking LSAT preparation courses.  On the other hand, most of Singh's advertising is directed toward potential LSAT course enrollees.  TES's advertising, such as direct mailings, is primarily directed to potential customers for its preparation courses for professional engineering examinations.

### 4.      Nature of Use of the Mark in Newspapers and Magazines

Singh uses the Mark primarily in university and pre-law publications which are likely viewed by individuals who will take the LSAT.  TES made a sizeable investment in website design, and uses the Mark on its Internet website.

### 5.      Consumer-Survey Evidence

Singh conducted a survey of (primarily) pre-law advisors.  The results of the survey indicate that, as of July 2003, Singh was consistently recognized as one of the top three LSAT preparation courses in major cities across the United States.  A more recent survey consisting of interviews at twelve law schools in ten states (not in

Texas) revealed that the majority of individuals interviewed recognized the Mark and associated it with Singh.

A survey conducted on TES's behalf involved telephone surveys of people who had recently taken or were planning to take engineering exams. Three hundred people were interviewed, half in Texas and half in other states (Arizona, Florida, and South Carolina). Of those interviewed, 50.7% stated that they associated the Mark with "one company," but no particular company was identified.

The Court finds TES's consumer survey unpersuasive. The respondents stated that they associated the Mark with "one company." If that "one company" were Singh or any company other than TES, the evidence would not support TES's position in this case. Moreover, the survey was directed only to people taking engineering examinations, and half of those interviewed were in Texas. TES has exclusive use of the "Testmasters" trademark in Texas and, therefore, it is not surprising that where half the survey respondents are in Texas, half the survey respondents would recognize the name "Testmasters" and associate it with "one company" – even assuming that "one company" is TES.

The Court finds Singh's consumer survey evidence equally unpersuasive. Like TES, Singh's survey was directed primarily to respondents in the subject matter area in which it has the greatest presence – the LSAT.

### 6. Direct Consumer Testimony

Both parties have presented direct evidence of consumer views.  Singh has presented evidence of confusion by persons registering for TES's LSAT preparation course believing they were registering for Singh's course.  TES has presented evidence from individuals residing in twenty-eight states who identify the Mark solely with TES.  These individuals, however, are engineering students.  As was true with the consumer survey evidence, this evidence has little persuasive value.  Each party's evidence shows that, in its strongest subject matter area, it is well-known and there may be some consumer confusion.

### 7. Defendant's Intent in Copying the Trademark

TES has not presented evidence that Singh copied the Mark from TES.  Indeed, the evidence in the record establishes that Singh was using the Mark in California before TES began using it in Texas, and was using the Mark for years before TES began using the Mark outside of Texas.  The Court notes that TES was using the Mark in Texas before Singh expanded to provide services here, but there is no evidence that Singh copied TES's Mark.

### 8. Other Evidence

Singh has presented evidence that its two primary competitors in the area of LSAT preparation courses, Kaplan and The Princeton Review, regularly compare

themselves to Singh and do not consider TES a national competitor.  TES objects to this evidence, arguing that the individuals from the competing companies are undisclosed experts because they are presenting evidence on the "secondary meaning factors."  The Court has only considered evidence from these individuals that is factual in nature and based on personal knowledge.  Consequently, TES's objection to the evidence is overruled and the evidence is considered for its limited probative value.

The parties have presented evidence regarding their national reputation.  Not surprisingly, TES's evidence indicates that it has a "stellar national reputation" in the engineering test preparation field and that TES is well known among engineers. Singh's evidence shows that it has a national reputation for LSAT preparation courses.

### 9.    Conclusion

The Court, based on its *de novo* review of the evidence as fact-finder for the Appeal, finds that TES has failed to demonstrate that the Mark has acquired secondary meaning on a nationwide basis for all test preparation courses.  TES's evidence seems to indicate that the "Testmasters" mark has acquired secondary meaning and identifies TES as the source of preparation courses for professional engineering examinations. Likewise, Singh's evidence seems to indicate that the "Testmasters" mark has acquired secondary meaning and identifies Singh as the source of LSAT preparation

courses.  The evidence does not, however, establish or even suggest that the Mark has acquired secondary meaning for all test preparation courses.

### E.    Singh's Use in Certain Geographic and Subject Matter Areas

TES argues that the TTAB failed to consider that Singh either had not used the Mark in certain geographic and subject matter areas, or that its use in those areas was limited.  This Court in conducting its *de novo* review has considered these issues to the extent the parties have presented relevant evidence and argument.  Moreover, this Court's *de novo* review is based on governing Fifth Circuit authority, under which "substantial exclusive use" is not a determinative factor.[10]

### F.    Injunction

TES complains that the TTAB failed to apply the injunction issued by Judge Gilmore in Civil Action H-99-2781.  The injunction, as modified by the Fifth Circuit, prohibited Singh from opposing TES's exclusive use of the trademark in Texas only. The record is clear and unequivocal that Singh was free to oppose TES's applications for registration of the Marks for use outside of Texas.  The TTAB properly applied the injunction.

---

[10]    The Court agrees, however, that Singh has not presented evidence that it uses the Mark extensively in the area of preparation courses for engineering examinations.

### G.      Conclusion

The Court has conducted *de novo* review of the evidence relevant to TES's appeal from the TTAB decisions.   Based on that review, and the application of governing legal authority, the Court concludes that Singh was properly granted leave to amend its oppositions and is not enjoined from opposing TES's applications for nationwide registration of the Mark.  The Court finds also that the Mark is descriptive, and that TES has not demonstrated that its use of the Mark has acquired secondary meaning in unrestricted geographic and subject matter areas.  As a result, TES cannot prevail on its appeal of the TTAB decisions, and it is not entitled to the registrations it seeks.[11]

## III.    SINGH'S INFRINGEMENT COUNTERCLAIMS

A brief history of this case bears repeating.  On July 24, 2002, the Fifth Circuit held in *TestMasters I* that Singh failed to establish secondary meaning.  Two days later, Singh filed another lawsuit asserting that the Mark had acquired secondary

---

[11]      In its Appeal, TES asserts in the alternative that it is entitled to a more restricted registration, either geographically or "a more limited listing of goods and/or services for which it proves its marks have achieved secondary meaning."  *See* Appeal [Doc. # 1 in Civil Action No. H-11-2035], ¶¶ 18, 22.  TES does not identify which specific limitations it believes may apply.  As is discussed throughout the Appeal section of this Memorandum and Order, it appears that TES may be able to establish that its use of the "Testmasters" mark in the area of professional engineering examinations has acquired secondary meaning nationwide.  However, there has been no specific request, argument, or evidence for that limited registration.

meaning.  *See* Civil Action No. H-03-3348.  On October 18, 2005, the Fifth Circuit held that the second lawsuit was barred by collateral estoppel.  *See TestMasters II*, 429 F.3d at 576.  Meanwhile, in November 2003, Singh had filed another lawsuit asserting that the Mark had acquired secondary meaning.  *See* Civil Action No. H-05-1085. The Fifth Circuit held that lawsuit barred by collateral estoppel.  *See Excel*, 274 F. App'x at 406.  Singh has now filed counterclaims in this case, again asserting that the Mark has acquired secondary meaning.   TES has moved to dismiss Singh's infringement counterclaims as barred by the collateral estoppel effect of *TestMasters I*.[12]

"Collateral estoppel precludes a party from litigating an issue already raised in an earlier action between the same parties only if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action."  *TestMasters II*, 428 F.3d at 572; *Excel*, 274 F. App'x at 404.  The Fifth Circuit has held that the issue of secondary meaning is identical in all three prior cases.  *See TestMasters II*, 428 F.3d at 573; *Excel*, 274 F. App'x at 404.

---

[12]     TES argues also that Singh lacks standing and is "permanently enjoined from claiming the trademark."  These arguments are moot and, additionally, are without merit.  The Court notes specifically that Singh is not permanently enjoined from claiming the trademark, only from "pursuing registration" of the trademark.  There is no injunction in place that precludes Singh from claiming common law trademark protection for its use of the "Testmasters" mark.

It is undisputed that the issue of secondary meaning was actually litigated in Civil Action No. H-99-2781 and before the Fifth Circuit in *TestMasters I*, and that the determination of the issue was a necessary part of the judgment in those cases. Therefore, absent some exemption from the collateral estoppel bar, Singh's infringement counterclaims must be dismissed.

In *TestMasters II*, the Fifth Circuit held that collateral estoppel would not bar Singh's claims only if "after a significant amount of time had passed an intervening factual change had occurred." *TestMasters II*, 428 F.3d at 575. The Fifth Circuit held that Singh's evidence that its company "has become more successful since the prior judgment" was an inadequate basis to avoid summary judgment unless Singh could demonstrate that "there has been a change in the minds of the public in the relevant geographic area such that they would immediately associate the 'TESTMASTERS' mark with [Singh's] test preparation corporation." *Id.* at 576. There, as here, the relevant geographic area is the entire nation, excluding Texas.

In *Excel*, the Fifth Circuit again ruled that the exemption to the collateral estoppel bar did not apply. The Fifth Circuit conducted its analysis based on factual developments in Singh's establishment of secondary meaning "post-2003." *See Excel*, 274 F. App'x at 406. Again, the Fifth Circuit held that increased business success was not dispositive. *See id.*

Singh now argues that the growth of the Internet and Singh's company are significant intervening factual changes that allow it to avoid collateral estoppel. As noted twice previously by the Fifth Circuit, the growth of Singh's company is not a "significant intervening change" that would allow Singh to relitigate the secondary meaning issue. *See TestMasters II*, 428 F.3d at 576; *Excel*, 274 F. App'x at 406. Singh has failed to explain how the growth of the Internet is a significant intervening change that "would suggest that there has been a change in the minds of the public in the relevant geographic area such that they could immediately associate the 'TESTMASTERS' mark with [Singh's] test preparation corporation." *See TestMasters II*, 428 F.3d at 576. This is particularly true since TES is the proper owner of the testmasters.com website, and since it appears from the record in the consolidated cases before the Court that TES has a greater presence in the online course market. Because Singh has not demonstrated both that a significant amount of time has passed and that there has been a significant intervening factual change, its infringement counterclaims are barred by collateral estoppel.[13] The Court notes that Singh's infringement counterclaims are based on Singh's position that its use of the Mark has acquired secondary meaning nationwide (except Texas) for all preparation

---

[13]     Singh notes that the TTAB has rejected TES's collateral estoppel defense. *See* Response [Doc. # 167], pp. 18-19. The Fifth Circuit rejected this argument in *Excel*, noting that the TTAB decision was not binding and was irrelevant. *See Excel*, 274 F. App'x at 403, n.4.

courses for all standardized tests in all subject matter areas.  It is conceivable that Singh would not be collaterally estopped from asserting and presenting evidence on the different, more narrow, issue that its use has acquired secondary meaning for LSAT preparation courses.  Singh has not indicated any interest, however, in pursuing a more narrow claim.

## IV.    TES'S INFRINGEMENT CLAIMS

### A.    Conduct in Texas

TES alleges that Singh has engaged in conduct in Texas that infringes TES's exclusive right to use the "Testmasters" trademark in this state.  The uncontroverted evidence establishes that Singh is not using the Mark in Texas.  As a result, Singh is entitled to summary judgment as to TES's infringement claim based on any alleged infringing use of the Mark in Texas.

### B.    Conduct Outside Texas

#### 1.    Preliminary Issues

In Civil Action No. H-99-2781, Judge Gilmore granted summary judgment that TES has no right to use the "Testmasters" name outside of Texas.  *See* M&R [Doc. # 123], p. 5.  That ruling is final and non-appealable.  In *TestMasters II*, the Fifth Circuit noted that "TES has established no rights to the mark outside of Texas."  *See TestMasters II*, 428 F.3d at 578.

Singh has raised as an affirmative defense that TES's claims are barred by estoppel.  *See* Answer and Amended Counterclaims [Doc. # 44], p. 5.  Where a previous court decides that a plaintiff can establish "secondary meaning" in only one geographic area and not anywhere outside that area, the plaintiff is barred by estoppel from later attempting to re-establish "secondary meaning" in those areas outside the original proscribed area.  *See Excel*, 274 F. App'x at 405 (citing *Int'l Breweries, Inc. v. Anheuser-Busch, Inc.*, 364 F.2d 261, 264 (5th Cir. 1966)).  The parties have not briefed whether TES's infringement claims based on conduct outside of Texas are barred by collateral estoppel.  The Court notes that TES has not asserted or presented evidence of a significant intervening factual change.

Additionally, the parties have not addressed the effect on TES's infringement claims of this Court's ruling on the Appeal, based on *de novo* review as the fact-finder.  Absent a full record and citations to legal authorities, the Court cannot adequately rule on these two issues.

### 2.     TES's Infringement Claims

Even if TES's infringement claims are not barred by collateral estoppel and even if this Court's ruling on the Appeal has no preclusive effect on TES's infringement claims, TES has failed to present evidence that raises a genuine issue of

material fact that its use of the Mark has acquired secondary meaning nationwide as to all preparation courses for all standardized tests.

TES has presented extensive evidence, as discussed above, indicating that its use of the "Testmasters" mark in connection with preparation courses for standardized tests in the ***engineering field*** may have acquired secondary meaning nationwide. TES's infringement claims, however, are not limited to allegations that Singh used the Mark in the professional engineering field.   The evidence presented by TES, particularly the consumer survey and the customer testimonials, indicate clearly that TES is well-known and has an excellent reputation in the engineering community. TES's evidence does not, however, even begin to suggest that consumers nationwide taking standardized test preparation courses in all subject matter areas have come to associate the "Testmasters" name with TES.  As was true of Singh's evidence in *TestMasters I*, TES's evidence in this case fails to show (or raise a genuine issue of material fact) that "a significant quantity of the consuming public" nationwide for preparation courses for all standardized tests associates the "Testmasters" mark with TES's business.  *See TestMasters I*, 2002 Wl 1940083 at *4.

TES, the master of its Complaint, has chosen to assert a very broad right in the "Testmasters" mark.  TES has failed to present evidence that supports its claim to that

broad right.   As a result, Singh is entitled to summary judgment on TES's infringement claim as asserted.[14]

## V.   **CONCLUSION AND ORDER**

It is clearly established, and is the subject of judicial estoppel, that the Mark is descriptive.   It is clear that Singh's infringement counterclaims, and possibly TES's infringement claims for conduct outside of Texas, are barred by collateral estoppel. The Court has conducted *de novo* review of the record and, as the fact-finder for purposes of TES's appeal from the TTAB decisions, finds that TES has not established secondary meaning as asserted and its applications for nationwide registration of the Mark for all test preparation courses in all subject matter areas were properly denied.   TES has failed to present evidence that raises a genuine issue of material fact regarding its claim to trademark rights nationwide for all preparation courses for all standardized tests in all subject matter areas.   Accordingly, it is hereby

**ORDERED** that, following *de novo* review, the decision of the TTAB is **AFFIRMED** and TES's applications the subject of Opposition Cases No. 91163136, 91164627, and 91171241, specifically the applications for geographically unrestricted registration of the Mark in connection with all "educational services, namely,

---

[14]   Even if TES had limited its claim to rights in the Mark in the area of preparation courses for standardized tests in the *engineering field*, it is unclear from the record whether Singh offers preparation courses for professional engineering tests.

providing courses of instruction and materials to prepare students to take and achieve higher scores on standardized tests," are **DENIED**.  It is further

ORDERED that Defendants' Motion for Summary Judgment [Doc. # 156] is **GRANTED** as to the Mark being descriptive, **GRANTED** as to the denial of TES's challenges to the TTAB decision, **GRANTED** as to TES's infringement claims relating to conduct in Texas, and **GRANTED** as to TES's infringement claims relating to conduct outside Texas as asserted in this case.  It is further

ORDERED that TES's Motion to Dismiss Defendants' Counterclaims or for Partial Summary Judgment [Doc. # 158] is **GRANTED** to the extent the Court concludes that Singh's infringement counterclaims are barred by collateral estoppel. It is further

ORDERED that counsel and principals shall appear before the Court for a status and scheduling conference at **10:00 a.m. on Tuesday, April 16, 2013**.

SIGNED at Houston, Texas, this **5**th day of **April, 2013**.

Nancy F. Atlas
United States District Judge